HOTEL PATTEN CO., WATTERSON HOTEL CO., UCITA INVESTMENT CO., AND J. B. POUND HOTEL CO., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5792. Promulgated October 12, 1928.

*Sam E. Whitaker, Esq.*, for the petitioners.
*John D. Foley, Esq.*, for the respondent.

944

OPINION.

VAN FOSSAN: Section 283(f) of the Revenue Act of 1926, which became effective on February 26, 1926, provides:

If any deficiency in any income, war-profits, or excess-profits tax imposed by the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, or the Revenue Act of 1921, or by any such Act as amended, was assessed before June 3, 1924, but was not paid in full before that date, and if the Commissioner after June 2, 1924, but before the enactment of this Act finally determined the amount of the deficiency, and if the person liable for such tax appealed before the enactment of this Act to the Board and the appeal is pending before the Board at the time of the enactment of this Act, the Board shall have jurisdiction of the appeal. In all such cases the powers, duties, rights, and privileges of the Commissioner and of the person who has brought the Appeal, and the jurisdiction of the Board and of the courts, shall be determined, and the computation of the tax shall be made, in the same manner as provided in subdivision (e) of this section, except as provided in subdivision (j) of this section and except that the person liable for the tax shall not be subject to the provisions of subdivision (d) of section 284.

In the proceeding under consideration the deficiency in the income tax, war-profits and excess-profits tax arose under the Revenue Act of 1918 and related to the year 1918. Such taxes were assessed in March, 1924, and were not paid in full before June 3, 1924. On June 27, 1925, the respondent finally determined the amount of the deficiency, setting forth such conclusion in the form of a certificate of overassessment. The petitioners appealed on July 25, 1925, and their appeal was pending before the Board on February 26, 1926, the date of the enactment of the Revenue Act of 1926. Therefore, it is our opinion that this case comes squarely within the said section

283 (f) of the Revenue Act of 1926 and that consequently we have jurisdiction of the appeal.

In the computation of invested capital the respondent disallowed the value of the Hotel Patten lease transferred by J. B. Pound to the Patten Hotel Co. in 1910 in exchange for its entire capital stock issue of $50,000, on the theory that Pound had acquired the lease for nothing. This fact in itself is not sufficient to assign no value to the leasehold. *Hotel Roth*, 1 B. T. A. 1111; *The Hub*, 3 B. T. A. 1259. Pound and five other competent witnesses fixed the value of the lease at from $100,000 to $200,000 at the time of its transfer to the Patten Hotel Co. All of these witnesses showed themselves to be thoroughly familiar with the hotel business in the South and East and particularly with the situation involved in the leasing and operation of the Hotel Patten, while three of them had had a special reason to ascertain the value of the lease in that they were interested in its purchase before, at or subsequent to the date Pound secured the lease. While the lease originally cost Pound nothing, he expended a considerable amount of money and much effort and lent his credit to the enterprise prior to his assignment of the lease to the corporation. These acts on his part in themselves contributed largely to the real value of the leasehold. We are of the opinion that the claim of the petitioners that the invested capital of the Hotel Patten Co. be increased by $50,000 should be sustained and that a corresponding allowance for computing exhaustion of the said leasehold be made.

Pound testified that the value of the assets transferred by the Chattanooga Hotel Co. to the Hotel Patten Co. in 1918 was approximately $136,000, while the amount of preferred stock received therefor was $100,000. He submitted no basis whatever for what he termed was his " opinion " of the actual cash value of those assets, and his testimony is not convincing. It is our opinion that the petitioners have not brought themselves within the requirements of section 326 (a) (2) of the Revenue Act of 1918, which defines invested capital as the—

Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner *to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus:* * * * (Italics ours.)

Petitioners, therefore, on the record, are not entitled to this increase of $36,000 in the invested capital of the Hotel Patten Co. as of January 1, 1918.

The petitioners contend that the lease covering the Hotel Seminole property was worth at least $150,000 at the time it was assigned to the Ucita Investment Co. in exchange for $99,000 of the capital stock of that corporation and introduced the testimony of various

real estate dealers and so-called experts to support their claim. However, in 1909 J. B. Pound, then a stranger to the enterprise, purchased at par the entire capital stock of $99,000. The company was in financial difficulties when Pound purchased its stock. It must be borne in mind also that the Hotel Seminole building itself was not properly adapted to hotel uses and that the success of the venture was by no means assured. We approve the action of the respondent in refusing to allow the sum of $51,000 as paid-in surplus, purporting to represent the excess value of the lease over the amount of capital stock received therefor. Consequently, no increased allowance should be made in computing exhaustion of that lease.

The petitioners assert that the respondent allowed depreciation on the Hotel Seminole property in the amount of $10,113.78 for the years 1918 and 1919, whereas the sum of $12,642.22 should have been allowed for each year. No evidence was submitted to support these figures. Pound described the character of the hotel building, and asserted that it was constantly in need of repairs and stated that in his opinion the yearly depreciation for 1918, 1919, and 1920 was from $12,000 to $15,000. The witness was not certain as to what method was employed by the Ucita Investment Co. in charging repairs, replacements and expenses on its books. On the record petitioners have not proved that they are entitled to an additional allowance for depreciation.

The respondent disallowed an excess value of $25,000, representing a lease on the Hotel Savannah which had been secured originally by S. J. and J. A. Newcomb and assigned by them to the Newcomb Hotel Co. The term of the lease was 21 years and the rental was based on the actual cost of the building and land. No money was expended for promotion or effecting the sale of stock or bonds and the construction bills were paid in cash, thereby resulting in unusual economy. The Hotel Savannah was exceptionally well located and at the time was the only first-class hotel in Savannah. Due to the ill health of J. A. Newcomb and to other purely personal reasons, Pound purchased the capital stock of the corporation, of the par value of $50,000, for the sum of $25,000. The corporation owned the furniture and fixtures and lease. J. A. Newcomb valued the lease at at least $25,000, while Pound testified that it was worth $150,000 at the time he secured control of the Newcomb Hotel Co. We are of the opinion that the petitioners are entitled to a lease value of $25,000 as invested capital, as claimed by them and that a corresponding allowance should be made in computing exhaustion of that lease.

The respondent has allowed as invested capital the sum of $60,000, representing the par value of the capital stock of the Watterson Hotel Co. received by J. B. Pound in exchange for the assignment of his lease on the Watterson Hotel property. The petitioners claim that the said lease had a value of at least $100,000 at the time of its

assignment, that the figure of $60,000 was merely nominal because Pound owned all of the stock except qualifying shares and that for purposes of State taxation and for other reasons the full value of the lease was not measured by the amount of capital stock received by Pound himself and other competent witnesses who had made offers for the purchase of this lease prior, near, and subsequent to the time of its acquisition by the corporation, the value therefor was established as at least $100,000. The evidence submitted is convincing and uncontradicted, and we hold that the excess amount of $40,000 claimed by the petitioner as added invested capital of the Watterson Hotel Co. is properly allowable. A corresponding increase should be allowed in computing exhaustion of the leasehold.

The sums expended by the Watterson Hotel Co. to assist in securing better roads for the vicinity of Louisville were for a purpose entirely too remote and unrelated to the direct business needs of the petitioner to permit their allowance as deductions from income. The sum of $2,200 contributed by the Watterson Hotel Co. in 1918 to assist in accomplishing the location of Camp Taylor was for the purpose of, and resulted in a direct and distinct business benefit to the petitioner, and is allowed as a proper deduction from income. *Anniston City Land Co.*, 2 B. T. A. 526; *Ranier Grand Co.*, 11 B. T. A. 520.

Petitioners contend that their invested capital for 1918 and 1919 should not be reduced by the amount of income taxes appearing due on the face of the returns and by additional taxes found to be due by the respondent for the immediately preceding years. Although no evidence was introduced on this point, this question was ruled adversely to petitioners in *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

*Judgment will be entered under Rule 50.*